IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIM N.[1], | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 23-2876 |
| | : | |
| MARTIN O'MALLEY[2], | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM

JOSÉ RAÚL ARTEAGA                                            November 1, 2024
United States Magistrate Judge[3]

The Commissioner of the Social Security Administration, through an Administrative Law Judge ("ALJ"), denied, in part, Kim N.'s application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, finding she was not disabled from December 9, 2009, through December 20, 2014. Kim N. seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g) and asks the Court to reverse and remand the Commissioner's decision.

---

[1] Kim N. is referred to solely by her first name and last initial in accordance with this Court's standing order addressing party identification in social security cases. *See* Standing Order, In re: Party Identification in Social Security Cases (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Oct. 25, 2024).

[2] Martin O'Malley became Commissioner of Social Security on December 20, 2023, and he is substituted as the Defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d).

[3] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (ECF 7).

After careful review of the record, Kim N.'s request for review is denied, and the Commissioner's decision is affirmed.[4]

## I.     BACKGROUND

Kim N. filed her application for DIB on April 18, 2013, alleging disability beginning December 9, 2009, based on disorders of the cervical and lumbar spine, depression, and anxiety. (Tr. 24, 273-74.) Initially, her claim was denied, and she timely filed a request for a hearing. (Tr. 136-38, 140-44.) ALJ Robert Droker held a hearing on July 7, 2016. (Tr. 62-91.) On August 12, 2016, he found Kim N. not disabled under the Social Security Act. She sought review of his decision from the Appeals Council, which it denied on July 25, 2017. (Tr. 1-7.)

Kim N. then sought judicial review of ALJ Droker's decision under 42 U.S.C. § 405(g) in September 2017. Magistrate Judge Timothy R. Rice recommended remanding her case for further proceedings. (Tr. 828-44.) Judge C. Darnell Jones, II adopted Judge Rice's August 2, 2018 Report & Recommendation on September 17, 2018 and the matter was remanded for further evaluation. (Tr. 827.) On November 10, 2018, the Appeals Council issued an order remanding Kim N.'s case for a new hearing and decision consistent with the District Court's Order. (Tr. 847-51.)

A second hearing was held before ALJ Elizabeth Lardaro on March 6, 2019. (Tr. 733-75.) In an April 18, 2019 decision, ALJ Lardaro found Kim N. disabled since

---

[4] Kim N.'s present request for review is limited to the ALJ's findings regarding her mental impairments prior to December 21, 2014.

December 21, 2014, but not between December 9, 2009—the alleged onset date—and December 20, 2014: a partially favorable determination. (Tr. 852-86.) Kim N. subsequently requested Appeals Council review of that decision and, on December 20, 2019, the Appeals Council remanded Kim N.'s DIB claim for reconsideration of her disability prior to December 21, 2014. (Tr. 888-93.)

On May 13, 2020, ALJ Lardaro held another hearing. (Tr. 710-32.) Kim N. and the Agency's Vocational Expert Lavonne Brent testified. (Tr. 713-31.) On June 3, 2020, ALJ Lardaro again found Kim N. not disabled prior to December 21, 2014. (Tr. 670-709.) More specifically, the ALJ determined that Kim N. had the residual functional capacity ("RFC") to perform "sedentary work, further limited to the performance of simple, routine, and repetitive tasks, no interaction with the public, only occasional interaction with supervisors and co-workers." (Tr. 729.) She found that Kim N.'s RFC precluded her past relevant work as a line installer-repairer. (*Id.*) Still, through Kim N.'s alleged period of disability, "there were jobs that existed in significant numbers in the national economy that [she] could have performed." (Tr. 696.) The Vocational Expert testified that Kim N. would have been able to perform "unskilled sedentary exertional occupations" such as: "a sorter . . . , a paster . . . , and a stuffer." (Tr. 697.) Based on a review of all evidence of record and the Vocational Expert's testimony, the ALJ concluded that Kim N. was not disabled because "[she] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.*)

Kim N. asked the Appeals Council to review this decision but on June 6, 2023, the Appeals Council denied her request. ALJ Lardaro's June 3, 2020 decision then became the

Commissioner's final act. (Tr. 659-64.) On appeal here, Kim N. argues the ALJ committed reversible error by: (1) improperly weighing medical opinion evidence and determining her mental RFC, (2) failing to evaluate her subjective statements properly, and (3) failing to account for her mental limitations in posing the hypothetical to the Vocational Expert. (ECF 8 at 1.)

## II.    LEGAL STANDARDS

Working through ALJs, the Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). The Commissioner determines whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment;[5] (3) has impairment(s) that meet or medically equal a listed impairment;[6] (4) has the capacity to do past relevant work, considering her RFC[7]; and (5) is able to do any other work, considering her RFC, age, education, and work experience. *Id.*

---

[5] A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).

[6] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[7] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

Where mental impairments are at issue, the five-step analysis includes additional inquiries. 20 C.F.R. § 404.1520a(a). In step two, the ALJ decides whether the claimant has any "medically determinable mental impairment(s)." *Id.* § 404.1520a(b)(1). Then, the ALJ determines "the degree of functional limitation resulting from the impairment(s)." *Id.* § 404.1520a(b)(2); *see also id.* § 404.1520a(d) (explaining that the ALJ uses the degree of functional limitation in determining the severity of the claimant's mental impairments). The ALJ rates the claimant's degree of limitation in "four broad functional areas" known as the "Paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 404.1520a(c)(3); 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The degree of limitation is rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, ––– F. 4th ––––, No. 23-2637, 2024

WL 4220691, at *1 (3d Cir. Sept. 18, 2024). ALJs need "explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.* Said otherwise, ALJ's "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). The Court may read the ALJ's decision "as a whole" to determine whether the record was sufficiently developed. *Id.*

Any legal issues the ALJ decides are subject to the Court's "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). This Court's review of the Commissioner's final decision is limited to the question of whether the findings of the ALJ are supported by substantial evidence in the record. 42 U.S.C § 405(g); *Johnson*, 529 F.3d at 200. "[T]he threshold for such evidentiary sufficiency is not high . . . ." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). A "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 359 (3d Cir. 2011). "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports his decision, even if they would have decided the case differently. *See Fargnoli*, 247 F.3d at 38. Therefore, the question before this Court is not whether Kim N. is disabled but rather whether the Commissioner's finding that she is not disabled between December 9, 2009—the alleged onset date—and December 20, 2014, is supported by substantial evidence and was reached upon a correct application of the law.

## III.   DISCUSSION

Mindful of the threshold for substantial evidence—"only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" a review of the record demonstrates that substantial evidence supports the Commissioner's determinations and remand is not required. *Biestek*, 587 U.S. at 103.

### A.   The ALJ Properly Evaluated Medical Source Opinions in Determining Kim N.'s Mental Residual Functional Capacity.

Kim N. first claims that the ALJ improperly evaluated medical opinions during her RFC analysis. Specifically, she argues that the ALJ erred by affording the opinion of her treating psychiatrist Dr. Levy only "some weight." (ECF 8 at 12.) She also contends

that the ALJ erred in not affording "significant weight" to the opinions of additional examining psychologists Drs. Neidigh, Fischetto, and Baptiste-Boles. (ECF 8 at 17.) Relatedly, Kim N. contends that the ALJ also erred in placing "any reliance" on the opinion of the Agency's non-examining psychological expert, Dr. Bennett. (ECF 8 at 15.) The ALJ's approach to these opinions did not constitute reversible error.

For DIB applications filed before March 27, 2017, medical opinions are assessed according to 20 C.F.R. § 404.1527, which dictates that an ALJ must give them the weight she deems appropriate based on factors such as whether the physician examined or treated the claimant, whether medical signs and laboratory findings support the opinion, and whether the opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(c).[8] "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).

Under the applicable regulation, the ALJ was required to give "controlling weight" to any treating source's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.") The ALJ was permitted to discount a treating opinion that conflicts with other objective tests or examination results. *Johnson*, 529 F.3d at 202-03. Even where an opinion

---

[8] The rules governing the evaluation of medical opinion evidence for claims filed after March 17, 2017 are different and are not applicable to this case. *See* 20 C.F.R. § 404.1520c (prescribing rules for claims filed after March 17, 2017).

is well-supported by medically acceptable clinical and laboratory findings, it "may nevertheless be contradicted, and even outweighed, by substantial nonmedical evidence," such as "evidence that the claimant engaged in activities that were inconsistent with the opinion." *Standards for Consultative Examinations and Existing Medical Evidence*, 56 Fed. Reg. 36932-01,36936 (Aug. 1, 1991). In other words, "the ALJ is not bound by the opinion of any one physician and can reject an opinion if there is a lack of support or a finding of contradictory evidence in the record." *Irey v. Colvin*, 13-7423, 2016 WL 337019, at *4 (E.D. Pa. Jan. 27, 2016).

Where a treating physician's opinion is not entitled to controlling weight, the ALJ must determine how much weight to give it by considering factors including the nature and extent of the treatment relationship, its length, the frequency of examination, supportability of the opinions, consistency of the opinions with the record as a whole, and any specialization of the physician. *See* 20 C.F.R. § 404.1527(c)(2)-(6). Ultimately, the ALJ must adequately explain her reasoning for the weight afforded to the opinion but "is not required to supply a comprehensive explanation for the rejection of evidence" where "a sentence or short paragraph" would suffice. *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

### 1.   The ALJ Properly Evaluated Dr. Levy's Opinion.

Kim N. contends that the ALJ erred in giving "some weight" to the treating source opinion of Stephen Levy, M.D., Kim N.'s primary psychiatrist. (ECF 8 at 10.) Dr. Levy opined that Kim N. had marked limitations in her ability to: make simple work decisions, complete a normal workweek without symptoms impacting her ability to perform at a

consistent pace, ask questions or request assistance, respond appropriately to changes in the work setting, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently. (Tr. 600-01.) Dr. Levy opined that Kim N. had moderate[9] limitations in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.*)

Substantial evidence supports the ALJ's decision to afford Dr. Levy's opinion only "some weight" because it was inconsistent with "the entire evidence of record." (Tr. 688-89.) *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (explaining that an ALJ may discredit the treating physician's opinion if contradictory evidence appears in the record). The ALJ noted that Dr. Levy's findings "more accurately support moderate limitations when considered in conjunction with the entire evidence of record." (Tr. 689.) Although Dr. Levy reported that Kim N. had a history of depression and anxiety, with symptoms including fatigue, insomnia, crying spells, feelings of hopelessness/helplessness, decreased energy, forgetfulness, poor concentration, passive suicidal thoughts, and social withdrawal, the ALJ found that Dr. Levy's "own treatment records" documented few abnormal mental status findings and indicated that Kim N.'s symptoms "improved in

---

[9] Dr. Levy's Psychological Impairment Questionnaire defines "moderately limited" as: "significantly affects but does not totally preclude the individual's ability to perform the activity.

part with regular psychotropic medication." (Tr. 684, 690.) During the period at issue, Kim N. reported that her symptoms of anxiety and irritability improved with medication at multiple visits. (Tr. 546-47, 550-51, 554.)[10]  In April 2014, she reported that while she still experienced sad moods, she had no suicidal ideation, and her anxiety and irritability were improved with medication. (Tr. 609.)

The ALJ adequately explained her reasons for finding Dr. Levy's conclusions were "inconsistent with the entire evidence of record." (Tr. 689.) While Dr. Levy's records "document several positive findings over the years," his records also include reports of Kim N.'s difficulties being "no more than slight," and show that even with inconsistent improvement, her limitations still "[did] not rise to the level, when analyzed with the objective findings on examination, of such limitations that would preclude work." (Tr. 688.)  For example, in June 2010, Dr. Levy noted that Kim N. exhibited okay sleep, appetite, and interest, along with improved concentration. (Tr. 547.)  In June 2012, Dr. Levy reported Kim N. exhibited calmness, with only slight impairments in interest and difficulty concentrating, and in September 2012, she had okay sleep, energy, appetite, and concentration. (Tr. 1134-35.) The ALJ cites other times where Kim N. "repeatedly exhibited intact concentration," and noted that in 2013, she could sustain part-time work. (Tr. 668, 1131.) Moreover, Kim N. was capable of socializing with family, and other

---

[10] Kim N. was treated with a combination of Remeron, Klonopin, Trazodone, and Restoril. The medication was unchanged until September 2011, when Abilify was added to her regimen. In March 2012, Abilify was discontinued, and Seroquel was prescribed. This was unchanged until April 2013, when Seroquel was discontinued. Kim N.'s medications were unchanged through the remainder of 2013 and early 2014. (Tr. 684.)

providers consistently described her as cooperative and pleasant. (Tr. 596, 688.)  The ALJ also explained that Dr. Levy's opinions contradicted Kim N.'s actual work activity. (Tr. 688-89.)  According to Kim N.'s own report in 2014, she stopped working as a waitress in 2013 "because of seasonal work and *physical* limitations." (Tr. 606 (emphasis added).) *See* 20 C.F.R. § 404.1571 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level.").

Kim N. also contends that the ALJ's mental RFC finding does not reflect any of the moderate limitations in Dr. Levy's opinion that the ALJ purportedly agreed with and that the ALJ failed to explain why the limitations were not adopted.  This is incorrect.  The ALJ explicitly states that she considered the moderate limitations recognized by Dr. Levy, explaining that they "*have been accounted for* by limiting [Kim N.] to frequently, but not constantly, performing simple, routine, and repetitive tasks; to occasional contact with supervisors and coworkers; and to no contact with the public." (Tr. 686 (emphasis added).)  Moreover, "[t]he law is clear" that a treating physician's opinion "does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011).

The ALJ recognized Dr. Levy's treatment relationship with Kim N. and adequately explained why she found his opinion inconsistent with the record evidence. There is "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's determination, and the Court may not re-weigh it to find otherwise. *Biestek*, 587 U.S. at 103 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

2.      **The ALJ Properly Evaluated the Opinions of Drs. Baptiste-Boles, Fischetto, and Neidigh.**

Kim N. contends that the ALJ failed to give "significant weight" to the opinions of three examining psychologists and instead rejected them "almost entirely based on conclusory determinations." (ECF 8 at 17.) The Court disagrees, as the ALJ provided detailed assessments of each opinion and the respective weight given. (Tr. 687-90.)

Raena Baptiste-Boles, Psy.D.,[11] conducted an independent examination of Kim N. in early 2014. (Tr. 685.)  She opined that Kim N.'s mental health symptoms appeared to be moderately to severely impacting her daily activities, vocational performance, and interpersonal reactions. (Tr. 607.)  At the time, Dr. Baptiste-Boles found Kim N.'s "current level of mental health symptoms" was "moderate." (Tr. 606.)  The ALJ properly assigned Dr. Baptiste-Boles' opinion "some weight." (Tr. 687.)  She focused on Dr. Baptiste-Boles' "specific findings under general observation and on mental status exam," which demonstrated "greater functioning in vocational and social performance" than opined by Dr. Baptiste-Boles. (*Id.*)  The ALJ cited Dr. Baptiste-Boles' findings that Kim N. exhibited alertness, orientation to person, place, and time, and adequate attention and concentration. (*Id.*)  In addition, Kim N. exhibited fair immediate and recent memory skills, adequate remote memory skills, adequate mental computation and abstract reasoning, fair insight, and adequate judgment as to self-care and social problem-solving. (*Id.*) The ALJ also cited Dr. Baptiste-Boles' finding that Kim N. demonstrated average

---

[11] The Florida Department of Health referred Kim N. to Dr. Baptiste-Boles for an evaluation to assist with a determination of eligibility for disability benefits.

intelligence and adequate receptive and expressive language skills. (*Id.*) The record supports the ALJ's assessment of Dr. Baptiste-Boles' opinion.

Larry Neidigh, Ph.D., saw Kim N. for a one-time evaluation on March 9, 2016. (Tr. 643.)  The ALJ correctly afforded his opinion "limited weight" because it was "mostly inconsistent with the medical evidence" and "Dr. Neidigh overestimate[d] [Kim N.'s] limitations based on the evidence as a whole." (Tr. 690.)  Although Dr. Neidigh checked a box on a form denoting that Kim N.'s impairments would lead her to miss work more than three days a month and opined that those impairments would impair her ability to maintain stable employment, the ALJ found Dr. Neidigh's examination of Kim N. supported greater functioning. (Tr. 690 ("Results of the evaluation reflected an individual of normal intelligence with some impairment in cognitive functioning at times.").)  Dr. Neidigh recognized that Kim N. had maintained steady employment since graduating from high school, only stopping when she suffered a physical injury. (Tr. 649.)  She reported no difficulties in the occupational setting and stated "that she has always gotten along well with bosses and co-workers . . . ." (Tr. 650.)  At the examination, Kim N. was "clear and articulate," and Dr. Neidigh found her "thought processes were logical and goal directed, though she did speak softly." (*Id.*)  The ALJ concluded that Dr. Neidigh's evaluation notes, along with the other evidence in the record, are inconsistent with his estimation of Kim N.'s limitations.  As a result, she assigned his opinion "limited weight." (Tr. 690.)  Upon review, the record does not support a different conclusion.

Anthony J. Fischetto, Ed.D., saw Kim N. for an evaluation in February 2019. (Tr. 1287.)  The ALJ appropriately assigned his opinion "limited weight" because it

overstated Kim N.'s "limitations based on the evidence as a whole" and was based on a one-time evaluation. (Tr. 696.) Regardless, the ALJ was not required to adopt Dr. Fischetto's opinion because it post-dated Kim N.'s September 30, 2018 date of last insured. (ECF 8 at 1; Tr. 674.) *See, e.g.*, *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (holding the ALJ did not err in giving little weight to an assessment of claimant's mental health conducted over two years after date last insured); *Cardinal v. Colvin*, 14-1368, 2016 WL 1237783, at *5 (E.D. Pa. Mar. 30, 2016) (holding "the ALJ need only consider medical records prior to the date of last insured"). The ALJ's consideration of Dr. Fischetto's opinion does not require remand.

### 3.    <u>The ALJ Properly Evaluated Dr. Bennett's Opinion.</u>

The ALJ gave varying weight to different portions of the opinion of the Agency's psychological expert, Dr. Gary Bennett, Ph.D. (Tr. 691.) Kim N. challenges the ALJ's analysis, arguing that it is "hard to follow" and ignores mental limitations identified by Dr. Bennett. (ECF 8 at 15.) Contrary to Kim N.'s contention, the ALJ's analysis is clear and adequately considers the limitations that Dr. Bennett identified.

Dr. Bennett opined that Kim N. could perform simple tasks, with no interaction with the general public and occasional interaction with co-workers and supervisors. (Tr. 85.)  The ALJ assigned this portion of the opinion "significant weight" because it was "consistent with the medical evidence and other evidence of record." (Tr. 691.)  The ALJ cited specific examinations throughout the alleged period of disability, such as a June 2012 examination where Kim N. "demonstrated occasional sadness and anxiety" but "also exhibited calmness with only slight impairments in interest and difficulty

concentrating." (*Id.*)  The ALJ highlighted that Kim N. was able to sustain part-time work during the alleged period of disability and did not stop due to her mental impairments. (*Id.*)  Further, the ALJ concluded that Dr. Bennett's findings supported "limitations in interaction and the ability to perform simple tasks," belying Kim N.'s assertion that the ALJ ignored limitations that Dr. Bennett identified. (*Id.*)

Dr. Bennett also stated that he had concerns about Kim N.'s ability to work.  The ALJ appropriately assigned "little weight" to this "vague" part of his opinion. (*Id.*)  It was not explained as "a function-by-function assessment," which, while not required, is something the Social Security Administration recommends for an assessment of a claimant's remaining ability to do sustained work activity in an ordinary work setting. (Tr. 691.)  *See also* SSR 96-8P ("The RFC assessment must . . . assess [a claimant's] work-related abilities on a function-by-function basis.").  *But see Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (affirming an ALJ's RFC determination without a function-by-function assessment where the ALJ questioned the claimant about her prior work's physical limitations and there was substantial evidence to support the ALJ's findings).  More importantly, the opinion of any physician as to a claimant's RFC or on the ultimate determination of disability is never entitled to special significance. 20 C.F.R. § 404.1527(d).  Rather, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361; 20 C.F.R. §§ 404.1527(d)(2) and (3).

Kim N. argues that the ALJ erred in placing "any reliance" on Dr. Bennett's opinion because opinions from non-examining sources are generally not entitled to

significant weight. *See* 20 C.F.R. § 404.1527(c). Nevertheless, "[w]here, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" although she "'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 429) (citations omitted)).  Based on the treatment notes from Dr. Levy and other providers, the ALJ had substantial evidence to conclude that the treating source's opinions were not well-supported and inconsistent with the record. Thus, the ALJ was entitled to, and did, give greater weight to the non-examining consultant—Dr. Bennett—whose opinion was consistent with the record.

The ALJ was "free to choose the medical opinion of one doctor over that of another" because she explained discounted evidence. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).  She did not discount the treating physician's opinion for no reason or the wrong reason. Rather, the ALJ's decision considered every medical opinion and adequately explained the weight afforded to each, citing specific evidence from the relevant disability period that either supported or contradicted each opinion. (Tr. 680-96.) Accordingly, substantial evidence supports her treatment of the opinion evidence in this case.

## B.     The ALJ Properly Evaluated Kim N.'s Subjective Claims.

Kim N. contends that substantial evidence does not support the ALJ's evaluation of her subjective statements. (ECF 8 at 21.)  An ALJ must make credibility determinations when evaluating lay testimony regarding a claimant's reported degree of pain and disability. *See Diaz*, 577 F.3d at 506 (explaining that reviewing courts "owe deference to

[the ALJ's] evaluation of the evidence and assessment of the credibility of witnesses"). In doing so, an ALJ may consider the internal consistency of the claimant's own statements, the medical evidence, the claimant's medical history, and findings by the state agency or other physicians. 20 C.F.R. § 404.1529. It is incumbent upon the ALJ to "specifically identify and explain what evidence [s]he found not credible and why [s]he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).

Here, "[a]fter careful consideration of the entire record," the ALJ found that Kim N.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "[her] statements concerning the intensity, persistence, and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 681.)  As part of her findings, the ALJ discussed the evidence of record and her observations at the hearing, including evidence regarding Kim N.'s past mental status examinations, treatment, and daily activities (Tr. 681-96.)  *See* 20 C.F.R. § 404.1529(c)(3) (identifying seven factors that may be relevant to evaluating symptoms, including activities of daily living, medication, and other treatment).  The ALJ noted that during examinations, Kim N. had a "positive attitude" and was "capable of attending to [an examiner's] questions without distraction, exhibiting adequate mental flexibility and demonstrating fair memory skills." (Tr. 605-06, 686.)

The ALJ also considered the effectiveness of Kim N.'s treatment regimen of medication management and bi-monthly counseling. (Tr. 684-85.)  *See* SSR 16-3P (explaining that an ALJ may consider if the frequency and/or extent of treatment sought

is not comparable with a claimant's subjective complaints). Kim N. saw Dr. Levy for routine psychiatric treatment in late 2009 and throughout 2010. (Tr. 684.) She continued to see him around every eight to twelve weeks until April 2014, when she went without mental health treatment for nearly two years. (Tr. 597, 1115.) The record showed that Kim N. "regularly admitted that psychiatric symptoms improved with medication management, and she required less medication over time." (Tr. 525-53, 686.) *See Dearth v. Barnhart*, 34 F. App'x 874, 875 (3d Cir. 2002) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling").

Moreover, the ALJ properly considered Kim N.'s daily activities, noting that she prepared basic meals, independently groomed and dressed herself, used the computer, drove, shopped in stores, and socialized with family a few days per week. (Tr. 679-81.) During the alleged period of disability, Kim N. reported that her "daily routine" consisted of watching television and "some housekeeping." (Tr. 606.) Kim N. also stated that when she stopped working part-time in 2013, it was due to "seasonal" and "physical limitations," rather than mental limitations. (*Id.*) *See Burns v. Barnhart*, 312 F.3d 113, 130 (3d Cir. 2002) (explaining that when there are inconsistencies in a claimant's testimony or daily activities, the ALJ may conclude that some or all of the claimant's testimony is not fully credible). While "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler*, 667 F.3d at 363 (citing 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.")). Here, the ALJ evaluated "the entire record" and the factors prescribed by 20 C.F.R. § 404.1529(c)(3), concluding that Kim N.'s impairments

caused some limitations but did not preclude her ability to perform work (Tr. 696.)  There was no error in the ALJ's evaluation of Kim N.'s subjective statements.

### C.   The ALJ Properly Accounted for Kim N.'s Mental Limitations in the Vocational Expert's Hypothetical.

Finally, Kim N. argues that the ALJ erred by failing to account for her moderate mental limitations in the hypothetical posed to the vocational expert ("VE") because (1) the ALJ did not instruct the VE to "consider any limitations in [Kim N.'s] ability to concentrate over time, maintain a particular work pace, or . . . persist at tasks, and (2) she did not "advise the VE to consider limitations in [Kim N.'s] ability to adapt or manage herself in a work environment." (ECF 8 at 22-23.)  Contrary to Kim N.'s argument, substantial evidence supports the RFC assessment. *See Rutherford*, 399 F.3d at 554 n.8 (explaining that "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.").  The ALJ asked the vocational expert a hypothetical question that incorporated all of Kim N.'s established limitations. (Tr. 729.)

To the extent that Kim N. points to moderate limitations for the "Paragraph B" criteria to argue that additional mental limitations should have been posed to the VE, she is incorrect.  Her argument conflates those criteria with the RFC analysis. While an ALJ must assess a claimant's mental health limitations by evaluating the "Paragraph B" criteria, 20 C.F.R. § 404.1520a(c)(3), the ALJ's findings concerning those criteria in step two do not bear directly on the language used in the RFC because those portions of the disability analysis serve distinct purposes.  *See Hess v. Comm'r of Soc. Sec*, 931 F.3d 198,

209 (3d Cir. 2019) (noting that the "Paragraph B" criteria are used to rate the severity of a claimant's mental limitations, while the RFC assesses a claimant's work-related restrictions). Thus, the ALJ is not required to use any specific "incantations" in her RFC analysis that reflect the consideration of a credible, established mental health limitation, so long as there is a "valid explanation for how" the ALJ considered the limitation "and whether it translates to a work-related restriction." *Id*. at 209-12; *see also Ramirez v. Barnhart*, 372 F.3d 546, 552 n.2 (3d Cir. 2004) (explaining that functional limitation findings need only be "adequately convey[ed]" in the ALJ's statement of limitation, not recited verbatim.).

Whether the ALJ provides a valid explanation is a fact-specific analysis. *Hess*, 931 F.3d at 212. In *Hess*, the Third Circuit held that an RFC could limit a claimant with "'moderate difficulties in 'concentration, persistence, or pace'" to "simple tasks"— without discussion of the moderate limitations—based on an analysis of opinion evidence, claimant-reported activities of daily living, and mental status examinations. *Id.* at 213-14. The court pointed to the ALJ's examination of the record combined with the ALJ's explanation that the claimant's daily activities were consistent with the ability to do simple tasks. *Id.*

Here, as in *Hess*, the ALJ adequately explained how her finding of moderate limitations in concentration, persistence, or pace was included in the RFC assessment by limiting Kim N. to "simple, routine, and repetitive tasks." (Tr. 680.) *See Hess*, 931 F.3d at 213 (stating "concentration, persistence, or pace is tightly linked to the capacity to complete simple tasks."). The ALJ also explained that her finding of moderate limitations

in adapting or managing oneself was accommodated in the RFC by limiting Kim N. to "occasional contact with supervisors and coworkers" and to "no interaction with the public." (Tr. 686, 728.)  These limitations were subsequently included in the hypothetical posed to the VE. (Tr. 729.)

The ALJ found that while Kim N. "exhibited occasional anxiety and difficulty with concentration," medical records reflected that she was able to attend to examiner questions "without distraction" and "repeatedly exhibited intact concentration." (Tr. 686, 689.)  The ALJ noted several times that Kim N. reported sustaining a job during a large portion of the relevant period and that providers "regularly described [her] as cooperative and pleasant." (Tr. 691.) She also discussed Kim N.'s self-reported complaints, mental status examinations, and daily activities such as driving, laundry, and paying bills. (Tr. 681-91.)

The ALJ detailed the opinion evidence, giving great weight to State Agency psychological consultant, Dr. Bennett, who opined that Kim N. could do simple tasks with no interaction with the general public and occasional interaction with co-workers and supervisors. (Tr. 680, 691.)  The ALJ's review of the record, moreover, led her to give little weight to the assertion that Kim N. had more severe limitations and to credit evidence that she could perform simple work. (Tr. 689.)  The ALJ explained that "this of course does not mean [Kim N.] was not limited by depression and anxiety," but that her mental limitations would not "preclude the performance of all work." (Tr. 685.)

The ALJ considered all the evidence of Kim N.'s mental health impairments in determining her RFC and the hypothetical for the VE. The limitation to "simple, routine,

and repetitive tasks" with occasional interaction with co-workers and supervisors and no interaction with the public was supported by a valid explanation and thus substantial evidence exists to support the ALJ's assessment of Kim N.'s RFC. (Tr. 680.)

## IV.   CONCLUSION

Upon review, the ALJ's decision and the underlying record show that her evaluation of Kim N. is supported by "such relevant evidence as a reasonable mind might accept as adequate to support" her determination. *Biestek*, 587 U.S. at 103. The threshold for "evidentiary sufficiency is not high" and remand for further consideration is not required. *Id.*

An appropriate Order follows.